**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delmo Figura Torrefranca,<br><br>  Petitioner,<br><br>vs.<br><br>Dora B. Schriro; et al.,<br><br>  Respondents. | No. CIV-05-2909-PHX-DGC (GEE)<br><br>**REPORT AND RECOMMENDATION** |

On September 22, 2005, Delmo Figura Torrefranca, an inmate confined at the Reeves County Detention Center in Pecos, Texas, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.); [doc. #1]  Before the court are the petition, the respondents' answer and the petitioner's reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for report and recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying the Petition for Writ of Habeas Corpus.  The trial court's failure to allow Torrefranca's wife to testify with the aid of an interpreter did not violate his rights under the Confrontation Clause.  His post-arrest statements were not involuntary.  His due process rights were not violated by the testimony of the state's expert witness.

Summary of the Case

On February 14, 2000, Torrefranca was indicted on one count of sexual conduct with a minor and two counts of sexual abuse. (Respondents' answer, Exhibit J.) The alleged victim was Torrefranca's 12-year-old step-daughter, J.F. (Respondents' answer, p. 2.)

In June of 1999, J.F.'s school sponsored a field trip to a water park. *Id.* J.F. wanted to go on the trip, but Torrefranca denied her permission to go because he disapproved of her friends. *Id.* J.F. disobeyed her step-father and went anyway because her friend, K.M., paid for her to go. *Id.* At the end of the trip, J.F. refused to go home and told K.M. she had been sexually abused. *Id.* The authorities were notified, and the police were sent to K.M.'s house to meet with J.F. *Id.*

J.F. was interviewed by Sergeant Mary Roberts. (Respondents' answer, p. 3.) J.F. told Roberts Torrefranca once took her into the bathroom, fondled her breasts and had sexual intercourse with her. *Id.*, Exhibit D, pp. 165-67. On another occasion, he fondled her breasts while they were sitting on the couch. *Id.*, Exhibit D, pp. 162-63.

Torrefranca was arrested and interviewed by Roberts. (Respondents' answer, p. 4.) In the interview, Torrefranca denied abusing his step-daughter, but he said he was tempted to do so. *Id.* He said J.F. once sat on his lap when he was in the bathroom and his penis might have touched her vagina through their clothing. *Id.*

J.F. was examined by Dr. Cathryn Coffman, a pediatrician and medical director for a child abuse assessment center. (Respondents' answer, p. 4.) J.F. told Coffman Torrefranca had sexual intercourse with her on two occasions. *Id.* She also told Coffman Torrefranca placed his penis near her rectal area and put his penis in her mouth on one occasion. *Id.*, p. 5. Coffman found a complete tear of J.F.'s hymen indicating some type of penetrating trauma. *Id.*

Prior to trial, the court held a voluntariness hearing to determine the admissibility of the statements Torrefranca made during the police interview following his arrest. (Respondents' answer, pp. 25-27.) Torrefranca testified he learned English in school and spoke it at work, but he would have preferred to have had a translator at the interview. *Id.* He further testified that

he believed he was required to respond to police questions based on his experience with the police in the Philippines. *Id.*

Thomas Streed offered expert testimony on the subject of false confessions. (Respondents' answer, Exhibit C. pp. 14-60.) In preparation for his testimony, he reviewed the videotape of Torrefranca's police interview four or five times and met with him for about two hours. *Id.*, Exhibit C, p. 25. He observed from the videotape that Torrefranca was slow to respond, displayed very poor recall, had a very poor vocabulary, and had difficulty articulating his answers. *Id.*, p. 34. His response to the police accusations was unusual indicating emotional immaturity. *Id.*, p. 43.

James F. Eder, professor of anthropology at Arizona State University, testified as an expert on the Philippines. *Id.*, Exhibit C, pp. 61. Philippino people, he said, generally try to avoid entanglements with the police. *Id.*, p. 69. If one were involved with the police, one would probably "go along" following the path of least resistance. *Id.*, pp. 71, 72. There is a perception that police are corrupt. *Id.*, pp. 70-71. Philippino people are expected to have a reasonable command of English and may be reluctant to admit when they do not understand. *Id.*, pp. 73-74. Philippino people sometimes laugh in stressful situations. *Id.*, pp. 82-83. Americans might view this laughter as inappropriate. *Id.*

The trial court found that, while Torrefranca had some difficulty with English, he understood the *Miranda* warnings given to him in English and waived his rights knowingly and intelligently. (Respondents' answer, pp. 25-27.) The court found no evidence of any physical or mental coercion. *Id.* The court also found significant the fact that Torrefranca did not confess to molesting his stepdaughter. *Id.* The court concluded Torrefranca's statements were given voluntarily. *Id.*

At trial, Roberts testified about her interviews with J.F. and Torrefranca. (Respondents' answer, p. 4.) Videotapes of the interviews were played for the jury. *Id.* J.F. admitted she told Roberts about the abuse but recanted and said that everything she told the police was a lie. *Id.*, p. 5. She explained her hymenal tear by saying she tried intercourse with her boyfriend. *Id.*

1  Mercedes Torrefranca (Mercedes), Torrefranca's wife and J.F.'s mother, testified that
2  she had no knowledge of any abuse. *Id.* When Torrefranca was arrested, she told Roberts she
3  once told Torrefranca "don't do something to [J.F.], she's your daughter now." *Id.*, p. 6. She
4  testified, however, that she was confused when she made the statement. *Id.*, p. 6. She denied
5  telling J.F. to lie in court. *Id.*, Exhibit E, p. 167. She said she told J.F.: "[T]ell the truth. This
6  is what happened, you scared to come home because you scared your dad's going to beat you."
7  (Respondents' answer, p. 6.)

8  Wendy Dutton testified as an expert in the field of child abuse. (Respondents' answer,
9  Exhibit E.) She did not read any of the police reports in the case or interview any of the
10 witnesses so her testimony was limited to general background information. *Id.*, Exhibit E, p.
11 33.  She testified that child abuse victims are "[o]verwhelmingly" abused by someone they
12 know. *Id.*, p. 33. Disclosure of the abuse is often delayed and offered in a piecemeal fashion.
13 *Id.*, p. 35-36. Recantation of actual abuse is "not uncommon." *Id.*, p. 37. She conceded some
14 children lie about abuse, but she asserted "[i]t's generally rare." *Id.*, p. 47.

15 Dr. Cathryn Coffman testified about her examination of J.F. (Respondents' answer,
16 Exhibit E, pp. 72-102.) She found a tear in the posterior rim of the hymen that was consistent
17 with sexual intercourse. *Id.*, p. 88.

18 James Eder testified as an expert on the Philippines. *See above*. According to Eder,
19 Asian families are patriarchal, and wives and children are expected to defer to the husband and
20 father.  (Respondents' answer, Exhibit F, p. 68-71.)  American-born children are not so
21 deferential, a fact which may result in increased stress in the family. *Id.* Philippino people do
22 not have the same sense of modesty as do Americans. *Id.*, pp. 72-75. It would not be unusual
23 for a father to go to the bathroom in front of other family members. *Id.*, p. 75. It would not be
24 unusual for a father to wear undershorts around the house. *Id.*, p. 76. Philippino people use
25 laughter to cope with stressful situations, particularly when interacting with an authority figure
26 such as a police officer. *Id.*, p. 80.

27 Torrefranca testified on his own behalf. (Respondents' answer, Exhibit G.) He said he
28 is strict with his children so they will be good children, good citizens and good Christians. *Id.*,

1  p. 10. He and J.F. do not have a good relationship. *Id.*, p. 14. She refuses to follow his house
2  rules and says he is not her real father. *Id.* He said he was afraid of the police because he was
3  told they beat you even here in America. *Id.*, p. 18. When the police asked him if something
4  unusual happened in the bathroom, he recalled the time when J.F. sat on his lap. *Id.*, pp. 18-19.
5  He testified he was tempted by Satan, but he resisted and left the bathroom. *Id.*, pp. 22-23. He
6  denied any abuse. *Id.*

7  A Child Protective Services report was read to the jury pursuant to stipulation.
8  (Respondents' answer, Exhibit G, pp. 63-64.) In January of 1999, J.F. was found at school in
9  possession of a large number of pills. *Id.* She told school officials she intended to commit
10 suicide because Torrefranca was physically abusive. *Id.*

11 Torrefranca's counsel intended to call Thomas Streed as an expert witness on police
12 interrogations (see above), but the court ruled he could not give a direct opinion about
13 Torrefranca's specific responses during the police interview. (Respondents' answer, Exhibit
14 G, p. 53-55.)   Instead, he would be required to limit his testimony to general background
15 information about police interviews. *Id.* Counsel decided against calling the witness. *Id.*

16 Torrefranca was convicted on all three counts. (Respondents' answer, p. 7.) On June
17 6, 2001, the court sentenced Torrefranca to a 20-year term of imprisonment on count 1, and
18 lifetime probation on counts 2 and 3. *Id.*

19 On June 6, 2001, Torrefranca filed a notice of appeal. *Id.* He raised the following issues:
20 (1) the trial court abused its discretion by failing to appoint an interpreter for one of the trial
21 witnesses; (2) his statements to Officer Roberts were involuntary; and (3) the trial court abused
22 its discretion by admitting the expert testimony of Wendy Dutton. *Id.*

23 The court of appeals affirmed the conviction and sentences on October 1, 2002. *Id.* The
24 Arizona Supreme Court denied review on May 15, 2003. *Id.*

25 Torrefranca filed a notice of post-conviction relief pursuant to Ariz. R. Crim. Proc. 32
26 on May 29, 2003. *Id.* In his petition, he argued (1) his sentence was based on false and
27 unreliable information; (2) his indictment was duplicitous and did not properly state the date
28 of the alleged offenses; (3) his speedy trial rights were violated; (4) the state failed to disclose

exculpatory evidence; (5) the court improperly admitted evidence of other acts; (6) the trial judge failed to properly instruct the jury as to the proper use of the other acts evidence; (7) the evidence admitted at trial was insufficient for a conviction; (8) the trial court was biased in favor of the prosecution; (9) the prosecution engaged in misconduct by failing to disclose exculpatory evidence and misrepresenting evidence at trial; (10) trial counsel was ineffective by failing to challenge the indictment, failing to assert speedy trial rights, failing to investigate, failing to call an expert witnesses, failing to suppress evidence, and failing to object to the prosecutor's misconduct, and appellate counsel was ineffective for failing to raise meritorious issues. (Respondents' answer, Exhibit KK.)

The state filed a timely response in which it argued the petition should be dismissed with leave to refile because it exceeded the page limit requirement. *Id.*, Exhibit LL. The state further argued claims (1-9) were procedurally barred because they could have been raised on direct appeal pursuant to Ariz. R. Crim. Proc. 32.2. *Id.* In the alternative, it argued claims (1-9) could be denied on the merits. *Id.* The state addressed claim (10) on the merits arguing Torrefranca's argument was entirely too vague and speculative to merit relief. *Id.*

The trial court denied the petition on September 21, 2004. *Id*, Exhibit OO. In its opinion, the trial court explains it "finds the State's arguments well taken" and accordingly dismisses the petition "for the reasons and based on the arguments presented by the State in this matter." *Id.* The court of appeals summarily denied review on August 11, 2005. *Id.*, Exhibit PP.

On September 22, 2005, Torrefranca filed the instant Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2254. (Petition.)   He claims (1) he was denied a fair trial because the court denied Mercedes the services of an interpreter at trial; (2) his statement to Detective Roberts was involuntary; (3) the trial court improperly allowed expert testimony on the subject of child abuse from Wendy Dutton; (4) the sentence was based on false and unreliable information; (5) the indictment was duplicitous and did not properly state the date of the alleged offenses; (6) his speedy trial rights were violated; (7) the state failed to disclose exculpatory evidence; (8) the court improperly admitted evidence of other acts; (9) the

trial judge failed to properly instruct the jury as to the proper use of the other acts evidence; (10) the evidence admitted at trial was insufficient for a conviction; (11) the trial court was biased in favor of the prosecution; (12) the prosecution engaged in misconduct by failing to disclose exculpatory evidence and misrepresenting evidence at trial; (13) trial counsel was ineffective for failing to challenge the indictment, failing to assert speedy trial rights, failing to investigate, failing to call expert witnesses, failing to suppress evidence and failing to object to the prosecutor's misconduct; and (14) appellate counsel was ineffective for failing to raise meritorious issues. (Petition.) The respondents filed an answer on June 8, 2006, and Torrefranca filed a reply on June 29, 2006.

Discussion

The writ of habeas corpus affords relief to prisoners in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241. If the petitioner is in custody pursuant to the judgment of a state court, the writ shall not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior*

*Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003). A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of her case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.* "It is not enough that our independent review of the legal question leaves us with a firm conviction that the state court decision was erroneous." *Id.* If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003). If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision. *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal review is limited to those issues that have already been fully presented to the state court. This so-called "exhaustion rule" reads in pertinent part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A). This rule permits the states "the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). In other words, the state courts must be apprised of the legal issue and given the first opportunity to rule on the merits. *Id.* at 275-76. Accordingly, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id.* The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal bases. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Lyons v. Crawford*, 232 F.3d

666, 668 (9th Cir. 2000), *as modified* 247 F.3d 904 (9th Cir. 2001); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and should ordinarily be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* A claim that is procedurally defaulted must be denied unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Confrontation Clause

In ground (1), Torrefranca argues the trial court's failure to allow Mercedes to testify through an interpreter violated his rights under the confrontation clause and the equal protection clause of the Constitution. (Petition.); (Respondents' answer, Exhibit CC.) Without an interpreter, he was unable to fully and completely cross-examine her. *Id.* Mercedes admitted she told the police she once told Torrefranca: "[D]on't do something to [J.F.], she's your

- 9 -

daughter now." *Id.* Without the benefit of an interpreter, Torrefranca argues, he was unable to properly discredit this prior statement. *Id.*

The respondents argue the federal nature of this claim was never presented below. (Respondents' answer.) They are incorrect. The appellate court, to be sure, treated this claim as though it were exclusively a state evidentiary issue. *Id.*, Exhibit FF. Nevertheless, Torrefranca did raise the federal nature of the claim in his direct appeal. (Respondents' answer, Exhibit CC, p. 29.) This matter has been properly exhausted.

The Sixth Amendment guarantees criminal defendants the right "to be confronted with the witnesses against him." *Murdoch v. Castro*, 365 F.3d 699, (9th Cir. 2004). This right of confrontation includes both the right to personally confront the state's witnesses and the right to subject the state's witnesses to cross-examination. *Id.*

"A criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination . . . ." *Id.* at 705. Confrontation Clause claims, however, are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nevertheless say that the error was harmless beyond a reasonable doubt." *Id.*

On the third day of trial, it became clear that the state would call Mercedes in their case-in-chief. (Respondents' answer, Exhibit E, pp. 8-17.) Torrefranca argued Mercedes' English was poor, and therefore she should have an interpreter. *Id.* The trial court conducted a short hearing and found Mercedes had a sufficient command of English to be able to testify without an interpreter.[1] *Id.* This is a finding of a factual issue and it is presumed to be correct. Torrefranca has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C.A. § 2254 (e)(1). He has not done so.

At trial, Mercedes testified that she speaks English at work and can read English, but her primary language is Cebuano, a Philippino dialect. *Id.*, Exhibit E, pp. 162-63, 169-70. She said

---

[1] The court of appeals held the trial court's decision was not an abuse of discretion. *Id.*, Exhibit FF, p. 4.

- 10 -

that sometimes she has problems expressing herself in English. *Id.*, p. 163. Nevertheless, on the witness stand, Mercedes was able to understand and respond appropriately to the attorneys' questions. *Id.*, pp. 147-171. She conceded she told the police she once told Torrefranca: "Don't do something to her, she's your daughter now." *Id.*, p. 159. On cross-examination, however, she testified that she was upset and crying during that interview. *Id.*, p. 161. At the time, she did not know where her daughter was, and she was concerned. *Id.* She testified she never suspected that Torrefranca was doing anything inappropriate to J.F. *Id.*, p. 164. She never saw him being sexually inappropriate. *Id.* She asserted that she would take the children and leave the house if Torrefranca was sexually abusing J.F. *Id.*, p. 166. She did not tell J.F. to lie in court and would not lie herself. *Id.*, p. 167-68. She said, "If you lie, you punish to God, you know, when you lie that's a sin. You lie." *Id.*, p. 168. Certainly, her English is not fluent. Nevertheless, she understood the questions asked of her, and she responded with sufficient clarity to be understood. The failure of the trial court to afford Mercedes the services of an interpreter did not violate Torrefranca's constitutional rights.

Moreover, even if there were a constitutional violation, Torrefranca cannot show prejudice. He does not explain what further testimony he could have elicited had Mercedes been able to testify through an interpreter. Mercedes clearly stated she did not suspect Torrefranca of any wrongdoing. She denied coaching J.F. to recant her earlier accusations. On balance, her testimony did as much for the defense as for the prosecution. If there were constitutional error here, it was harmless beyond a reasonable doubt. The state court did not clearly err when it affirmed the trial court's decision to deny Mercedes an interpreter. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003).

Defendant's Statements

In ground (2), Torrefranca argues his statements to the police should have been suppressed as involuntary. (Petition.) The respondents concede this issue has been exhausted.

A defendant's statement made during a custodial interrogation may not be used in the government's case-in-chief unless the statement was given voluntarily after a knowing and

- 11 -

intelligent waiver of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). A statement is involuntary if, considering the totality of the circumstance, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994).

The trial court found Torrefranca waived his Miranda rights knowingly and intelligently. This is a finding of fact, and it is presumed to be correct. *See United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998). Torrefranca has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C.A. § 2254 (e)(1). He has not done so.

Officer Roberts read Torrefranca the *Miranda* warnings from a prepared card. (Respondents' answer, Exhibit C, p. 91.) Torrefranca did not appear intoxicated or impaired. *Id.*, p. 93. Roberts made no promises or offers of immunity. *Id.*, pp. 93-94. English was obviously not Torrefranca's primary language, but he understood the "great majority" of what Roberts was saying. (Respondents' answer, Exhibit FF, p. 8.) The trial court was able to view a videotape of the interview and therefore had a complete picture of Torrefranca's English language ability. *Id.*, p. 7. Torrefranca waived his *Miranda* rights knowingly and intelligently. There was no evidence of improper government coercion. Torrefranca's statements therefore were made voluntarily.

Torrefranca argues his Philippino background made him fear the police and compelled him to respond to police questioning. Assuming this is true, it is irrelevant. Torrefranca has no evidence the police were aware of his predisposition and decided to exploit it. Accordingly, there was no governmental coercion, and his statements were not involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Bae v. Peters*, 950 F.2d 469, 475 (7th Cir. 1991) (The fact that the defendant was Korean and believed the police would physically abuse him if he did not confess was "irrelevant" absent evidence that the police "knew about or took advantage of his fears."). The decision of the state court denying relief on this claim was not an "unreasonable application of clearly established Federal law." *See* 28 U.S.C. § 2254(d).

- 12 -

Expert Testimony

In ground (3), Torrefranca argues his right to a fair trial was violated when the state's expert witness improperly vouched for the credibility of the child witness. (Petition.); (Respondents' answer, Exhibit CC.) Specifically, he argues the expert witness, Wendy Dutton, improperly offered her opinion that (1) child victims are "overwhelmingly" abused by family members rather than by strangers, (2) recantation is "not uncommon," and (3) while false accusations do occur, "[i]t's generally rare."[2] *Id.*

The respondents argue the federal nature of this claim was never presented below. They are incorrect. The appellate court, to be sure, treated this claim as though it were exclusively a state evidentiary issue. (Respondents' answer, Exhibit FF.) Nevertheless, Torrefranca did raise the federal nature of the claim in his direct appeal. (Respondents' answer, Exhibit CC, p. 29.) He specifically stated the expert testimony violated due process and his right to a fair trial under the Sixth and Fourteenth Amendments to the Constitution. *Id.*, pp. 45-46. This matter has been properly exhausted.

---

[2] This last comment was offered by the expert witness during the defendant's cross-examination. The exchange reads as follows:

Q: Okay, I suspect it's true that children of all ages lie about sexual abuse at times. I am not talking about commonality or anything, I'm just talking about sometimes lie.

A: It's true they sometimes lie. It's generally rare.

The court of appeals concluded this comment did not constitute error because the defendant "opened the door" to this otherwise irrelevant evidence.

This finding however is somewhat problematic. One could argue the expert's comment was added gratuitously and not in response to counsel's specific question. It should also be noted that, prior to trial, defendant's counsel filed a motion in limine concerning the issue of improper vouching. (Respondents' answer, Exhibit E, pp. 3-5.) The state agreed to warn its witness not to say it is "common" for child witnesses to recant. *Id.* Arguably, the expert was on notice that vouching evidence was improper when she "volunteered" her problematic testimony.

Fortunately, this issue is not dispostive. *See below*. The court assumes, without deciding, that the invited error doctrine does not apply. *See, e.g., Snowden v.Singletary*, 135 F.3d 732, 739 n. 5 (11th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998); *But see Tiger v. Workman*, 445 F.3d 1265, 1267-68 (10th Cir. 2006).

- 13 -

Under certain circumstances, expert testimony that improperly vouches for the victim's credibility may invade the province of the jury and deny the defendant a fair trial. *See Snowden v. Singletary*, 135 F.3d 732, 737-38 (11th Cir. 1998). To justify habeas relief, however, the defendant must do more than show that admission of the testimony was erroneous under state law. He must assert a wholesale "failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974); *See also Dowling v. United States*, 493 U.S. 342, 674 (1990); *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986), *cert. denied*, 479 U.S. 1068 (1987). In this case, the improper testimony did not rise to this level of error.

The expert in this case did not interview the child witness and was speaking only about general patterns of behavior. (Respondents' answer, Exhibit E, p. 33.) The improper vouching was indirect and isolated. *Id.*, Exhibit E, pp. 23-60. The prosecutor did not draw attention to the improper testimony in his closing arguments. *Id.*, Exhibit G, pp. 84, 85, 88, 90, 110, 115. Moreover, the trial court properly instructed the jury as follows:

> It's your duty to determine what the facts are in the case by determining what actually happened. . . You as jurors, are the sole judges of what happened . . . [I]t's your decision and yours alone to evaluate the credibility and believability of all the witnesses, both expert and non-expert and the weight to be given to all of the testimony. You *should not rely on the testimony of an expert* to tell you what result you should reach.

*Id.*, Exhibit G, pp. 68, 70 (emphasis added). The testimony of the expert did not violate Torrefranca's due process right to a fair trial. *See also McCafferty v. Leapley*, 944 F.2d 445, 452-54 (8th Cir. 1991), *cert. denied*, 503 U.S. 911 (1992) (Expert testimony on the likelihood that children lie about sex abuse did not violate due process.); *Adesiji v. Minnesota*, 854 F.2d 299, 300-01 (8th Cir. 1988), *cert. denied*, 489 U.S. 1031 (1989) (Expert testimony on general patterns of credibility among children reporting sexual abuse did not violate due process.); *But see Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998) (Expert testimony that 99.5% of children tell the truth about sexual abuse violated due process where the expert interviewed the child witness and the prosecution emphasized the significance of this expert opinion in his argument to the jury.). The state court did not clearly err when it affirmed the trial court's

admission of expert testimony. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003).

Grounds (4-12)

The respondents argue grounds (4-12) are procedurally defaulted. They are correct. These claims were raised in Torrefranca's first post-conviction relief petition. (Respondents' answer, Exhibit KK.) In their response to the petition, the state argued the petition should be dismissed as procedurally barred and, in the alternative, denied on the merits. *Id.*, Exhibit LL. The trial court denied the petition explicitly adopting the arguments presented by the state in their response. *Id*, Exhibit OO. Accordingly, the trial court found the claims barred and, in the alternative, meritless.[3]

The court of appeals summarily denied review. *Id.*, Exhibit PP. This court must assume the court of appeals adopted the reasoning of the trial court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The respondents were unable to obtain a copy of Torrefranca's brief before the court of appeals. They concede this petition probably contained the same issues presented to the trial court. (Respondents' answer, p. 8, n. 2.) Torrefranca does not dispute this assumption. This court will assume Torrefranca's brief before the court of appeals raised all the issues presented to the trial court.

The issues raised in grounds (4-12) were raised below and found barred for procedural reasons. They are procedurally defaulted.[4] *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) (A claim denied in the alternative on the merits does not vitiate a procedural bar.); *Loveland v.*

---

[3] The state also argued the petition should be dismissed with leave to amend because it exceeded the page limit restriction. The trial court clearly did not follow this recommendation.

[4] This court assumes all the issues raised in grounds (4-12) were raised before the court of appeals. Any issues raised in the instant petition that were not raised before the court of appeals are procedurally defaulted because the time for bringing these issues in state court has passed. *See* Ariz. R. Crim. P. Rule 32.4(a); *See also Beaty v. Stewart*, 303 F.3d 975, 989-90 (9th Cir. 2002) (The petitioner may not "fundamentally alter the legal claim already considered by the state courts" with "new factual allegations."); *Aiken v. Spalding*, 841 F.2d 881, 884 n. 3 (9th Cir. 1988).

- 15 -

*Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000); *See also Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992), *cert. denied*, 507 U.S. 992 (1993) (Arizona's rule of preclusion is regularly and consistently applied.).

Procedural default may be excused if the petitioner can show cause and prejudice. Cause is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, "[t]he habeas petitioner must show not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

In his reply brief, Torrefranca argues his procedural defaulted should be excused because he has "no access to a law library and case law" and did not know he was required to present his claims to the Arizona Supreme Court to satisfy the exhaustion requirement as the respondents argue in their answer. (Petitioner's reply, p. 18.) The respondents' argument, however, is incorrect. (see below) Torrefranca was not required to present his claims to the Arizona Supreme Court. His claims, however, are procedurally defaulted for a different reason – he failed to raise them in his direct appeal. Torrefranca does not argue cause for *this* default.

Torrefranca asserts in this petition that appellate counsel was ineffective, and, under certain circumstances, ineffective counsel may constitute cause for a default. *See Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). Torrefranca, however, cannot show counsel's performance was constitutionally deficient as he must if the default is to be excused.[5] Contrary to Torrefranca's assertions, appellate counsel is not constitutionally obligated to raise every non-frivolous claim suggested by the defendant. (Petition, p. 58); *Smith v. Murray*, 477 U.S. 527, 536 (1986) ("This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."); *Jones v. Barnes*, 463 U.S. 745, 754 (1983). To show ineffective assistance, Torrefranca must show appellate counsel omitted an issue that was

---

[5] The court analyzes the issue of ineffective assistance without applying the deferential AEDPA standard. *See Fischetti v. Johnson*, 384 F.3d 140, 154-55 (3rd Cir. 2004).

- 16 -

"clearly stronger than the issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Torrefranca cannot make this showing. (Petition, p. 58.) He simply asserts counsel failed to raise "obvious and significant issues." *Id.* He presents no facts or arguments to allow the court to evaluate this conclusory statement. Torrefranca cannot show his appellate counsel was constitutionally ineffective. He therefore cannot show cause for his default. Moreover, Torrefranca does not argue the alleged errors in grounds (4-12) reach the level of prejudice required to excuse his default. (Petitioner's reply, p. 18.) Torrefranca does not show cause and prejudice for his default.

Torrefranca further argues his procedural default should be excused because he is "actually innocent" of the charges against him. *Id.*, p. 19. Procedural default may be excused if the petitioner can show failure to address the claim on the merits would lead to a fundamental miscarriage of justice. This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 126 S.Ct. 2064, 2077 (2006). This is a demanding standard and may be found only in "extraordinary" cases. *Id.* Torrefranca, however, presents no new evidence of his alleged innocence. He simply maintains the evidence presented at trial was insufficient for a conviction. He is incorrect. A reasonable juror could chose to believe J.F.'s original statement to the police and reject Torrefranca's testimony to the contrary. Torrefranca cannot show failure to address grounds (4-12) on the merits would result in a fundamental miscarriage of justice. The issues raised in grounds (4-12) are procedurally defaulted.

Ineffective Assistance of Counsel

In ground (13), Torrefranca argues trial counsel was ineffective by failing to challenge the indictment, failing to assert speedy trial rights, failing to investigate, failing to call an expert witnesses, failing to suppress evidence and failing to object to the prosecutor's misconduct. (Petition.) In ground (14), Torrefranca argues his appellate counsel was ineffective for failing to raise meritorious issues. *Id.*

- 17 -

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Torrefranca challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal citation omitted).

The respondents argue these grounds were not properly exhausted and are now procedurally defaulted because they were not presented to the Arizona Supreme Court. In Arizona, however, to properly exhaust a claim the petitioner need only raise it before the court of appeals, not the state supreme court. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 348 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). The government argues *Swoopes* is incompatible with the Supreme Court's subsequent holding in *Baldwin v. Reese*, 541 U.S. 27 (2004) and therefore is no longer good law. The Ninth Circuit, however, affirmed the validity of *Swoopes* in *Castillo* which was decided after *Baldwin*. *See above*.

Torrefranca raised his ineffective assistance claims in his motion for post-conviction relief. The state argued in its response that Torrefranca's argument was simply a "myriad of unsupported allegations" lacking "factual allegations, records, affidavits, or any other evidence to support his claims." (Respondents' answer, Exhibit LL, p. 154.) The trial court adopted the state's argument, and the court of appeals adopted the argument of the trial court. *Id.*, Exhibits OO, PP. This court will assume Torrefranca's brief before the court of appeals raised the same issues presented to the trial court. *See above.*

The issues raised in grounds (13) and (14) were raised below and denied as unsupported speculation.[6] The state court's analysis was not unreasonable.

Torrefranca's petition is simply a series of accusations without enough detail for the court to properly understand his meaning. To make out a proper claim, Torrefranca must explain specifically what his attorney should have done differently and how the proceedings would have been different if counsel's performance had not been deficient. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). The decision of the state court denying relief on these claims was not an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d). *See also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994), *cert. denied*, 513 U.S. 935 (1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus. [doc. #1]

---

[6] The court assumes all the issues raised in grounds (13) and (14) were raised before the state court of appeals. Any issues raised in the instant petition that were not raised before the court of appeals are procedurally defaulted because the time for bringing these issues in state court has passed. *See* Ariz. R. Crim. P. Rule 32.4(a).

- 19 -

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 10 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk is directed to send a copy of this report and recommendation to the petitioner and the respondents.

DATED this 13th day of July, 2006.

_____
Glenda E. Edmonds
United States Magistrate Judge