**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delmo Figura Torrefranca, ) | No. CV-05-2909-PHX-DGC (GEE) |
| Petitioner, ) | **ORDER** |
| vs. ) | |
| Dora Schriro; and the Attorney General ) of the State of Arizona, ) | |
| Respondents. ) | |

Pending before the Court are Petitioner Delmo Torrefranca's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and United States Magistrate Judge Glenda Edmond's report and recommendation ("R&R"). Dkt. ##1, 22. The R&R recommends that the Court deny the petition. Dkt. #22 at 19. Petitioner has filed an objection to the R&R. Dkt. #25. For the reasons set forth below, the Court will accept the R&R and deny the petition.

**I.   Background.**

On February 14, 2000, Petitioner was indicted in Arizona state court on one count of sexual conduct with a minor and two counts of sexual abuse. The alleged victim was Petitioner's 12-year-old stepdaughter, J.F. Petitioner was convicted by a jury on all counts on April 11, 2001, and was sentenced to 20 years imprisonment and lifetime probation on June 6, 2001.

1  Petitioner filed a timely notice of appeal from the judgment and sentence. The Arizona Court of Appeals affirmed the convictions and sentences on October 1, 2002. The Arizona Supreme Court denied review on May 15, 2003.

Petitioner filed a petition for post-conviction relief in the trial court on May 29, 2003. The trial court denied the petition on September 21, 2004. The court of appeals denied review on August 11, 2005.

Petitioner commenced this action on September 22, 2005. Dkt. #1. The petition asserts fourteen grounds for relief. *Id.* Respondents filed an answer on June 8, 2006, and Petitioner filed a reply on June 29, 2006. Dkt. ##20-21. The Magistrate Judge filed her R&R on July 13, 2006, and Petitioner filed his objection on August 28, 2006. Dkt. ##22, 25.

**II.    Analysis.**

    **A.    Standard of Review.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may not grant habeas relief unless it concludes that the State's "adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Nor may the Court grant habeas relief under the AEDPA unless Petitioner has exhausted his claim in state court. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).

    **B.    First Ground for Relief.**

Petitioner contends in his first ground for relief that the trial court's failure to allow Petitioner's wife, Mercedes Torrefranca, to testify at trial through an interpreter violated his rights under the Confrontation and Equal Protection Clauses of the United States Constitution. Dkt. #1 at 5. The state called Mercedes as a witness during its case-in-chief. Dkt. #20, Ex. E at 8-17. Petitioner argued that Mercedes needed an interpreter because her English was poor. *Id.* The trial court questioned Mercedes outside the presence of the jury

1  and found that she had sufficient command of English to testify without an interpreter. *Id.*
2  Mercedes testified at trial, confirming that she told the police that she once told Petitioner:
3  "[D]on't do something to [J.F.], she's your daughter now." *Id.* at 156, 159.

4  Petitioner contends that without the aid of an interpreter, Mercedes was unable to
5  adequately explain this statement and Petitioner was unable effectively to cross-examine her.
6  Dkt. #1 at 5-8. The Magistrate Judge concludes that Petitioner has not, by clear and
7  convincing evidence, shown that the trial court's finding that Mercedes was able to testify
8  without an interpreter was unreasonable. Dkt. #22 at 10-11 (citing 28 U.S.C. § 2254(e)(1)).
9  The Magistrate Judge further concludes that the court of appeals did not clearly err in
10 affirming the trial court's decision to deny the request for an interpreter. *Id.* at 11.[1]

11 Petitioner objects to these conclusions on the ground that the Magistrate Judge
12 "is trying to argue, and mislead this Court to believe, that Mercedes was able to understand
13 and respond appropriately to the attorneys' questions." Dkt. #25 at 4. Petitioner states that
14 the Magistrate Judge "should have made a finding of fact based on the evidence presented
15 by Petitioner in his [petition], rather than her own arguments, while ignoring or not
16 considering a single fact that supports Petitioner's claims." *Id.*

17 Petitioner's objection is not well-taken. The Magistrate Judge readily acknowledges
18 that Mercedes was not fluent in English and that she sometimes had problems expressing
19 herself in English. Dkt. #22 at 10-11. The Magistrate Judge concludes from all of the
20 evidence, however, that the trial court's finding that Mercedes understood the questions
21 asked of her and responded with sufficient clarity to be understood by the jury was not

---

[1]The court of appeals stated the following in affirming the trial court's decision:

> We have reviewed the record, including the trial court's interview with Mercedes and Mercedes's testimony. During that testimony, Mercedes conceded that she could speak and read English and that she did so in her work as a machine operator. While it is apparent that Mercedes is not perfectly fluent in English, her testimony was fully comprehensible. The [trial] court did not abuse its discretion in refusing to appoint an additional interpreter.

Dkt. #20 Ex. FF ¶ 12.

1 incorrect or unreasonable. Id.

2     The Court has reviewed the complete testimony of Mercedes and agrees with the Magistrate Judge's conclusion. Mercedes was able to answer the vast majority of the questions clearly and without the need for any clarification. Dkt. #20, Ex. E at 147-171. In the few instances where she did request clarification, she appears to have understood the question as clarified and answered appropriately. *Id.* Moreover, defense counsel questioned Mercedes carefully on cross-examination and appears to have encountered no difficulty making every point he desired. *Id.* In short, Petitioner has not shown that the trial judge's decision concerning the need for a translator was incorrect. *See* 28 U.S.C. § 2254(d)-(e); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (stating that § 2254(d) imposes a highly deferential standard for evaluating state court decisions and demands that such decisions be given the benefit of the doubt) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

    The Magistrate Judge also concludes that Petitioner cannot show prejudice because Mercedes clearly testified that she never suspected Petitioner of any wrongdoing, and Petitioner does not explain what further testimony he would have elicited had Mercedes been allowed to testify through an interpreter. Dkt. #22 at 11. Petitioner does not address this issue in his objection other than by asserting that Respondents "waived their defense and chose not to argue this claim." Dkt. #25 at 4. The Court agrees with the Magistrate Judge's conclusion. Mercedes testified that she never saw Petitioner touch J.F. in an inappropriate way, that she did not suspect Petitioner of molesting J.F., that she would have moved out of the house had she suspected molestation, and that she would not lie to protect Petitioner if he had molested her daughter. Dkt. #20, Ex. E at 164-67. Petitioner has not shown prejudice. The Court will accept the R&R with respect to the first ground for relief.[2]

---

[2]Petitioner contends that the Magistrate Judge erred in failing to hold an evidentiary hearing. Dkt. #25 at 5 (citing *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004)). The trial court, however, had Mercedes take the stand and answer questions regarding her ability to speak English and heard argument from counsel on the issue. Dkt. #20, Ex. E at 8-17. The Magistrate Judge was thus not required to hold an evidentiary hearing. *See Perez v. Rosario*, 459 F.3d 943, (9th Cir. 2006) ("Where a state court has already made the relevant

### C. Second Ground for Relief.

Petitioner argues in his second ground for relief that his waiver of his *Miranda* rights was not knowing and intelligent and that his statements to the police were involuntary under the Due Process Clause of the Fourteenth Amendment. Dkt. #1 at 9-13. Following his arrest, Petitioner was interviewed by Sergeant Mary Roberts of the Phoenix Police Department. The entire interview was videotaped. Dkt. ##20 Ex. C, 31 Exs. QQ & RR.[3] During the interview, Petitioner repeatedly denied having sexual intercourse with J.F. Petitioner admitted, however, that he "almost had sex with her" and was tempted to do so. Petitioner told Sergeant Roberts about an incident in his bathroom in which his penis might have touched J.F.'s vagina. Dkt. #20 Exs. F at 41-49, G at 24; Dkt. #31 Exs. QQ & RR.

Sergeant Roberts testified at the *Miranda* and voluntariness hearing that she read Petitioner his *Miranda* rights from a prepared card and that he waived those rights. Dkt. #20, Ex. C at 90-93. Sergeant Roberts further testified that Petitioner did not appear to be intoxicated or impaired when he waived his *Miranda* rights. *Id.* The trial court viewed the videotape of the interview during a recess in the hearing. *Id.* at 106, 131. The trial court found that Petitioner knowingly, intelligently and voluntarily waived his *Miranda* rights:

> I have read [the] briefs and some additional cases. I have considered all of the circumstances and standards set forth in A.R.S. § 13-3988. It does not appear to me that the defendant failed to understand his *Miranda* rights. There was no physical coercion apparent, no other type of coercion that impacts the voluntariness of [his statements] in my perception.

*Id.* at 134. The court of appeals affirmed the trial court's ruling. Dkt. #20, Ex. FF ¶¶ 21-22.

---

findings of fact, district court evidentiary hearings would have no purpose if not to produce new evidence possibly contradicting those state court findings.").

[3]Respondents stated in their answer that they were unable to locate a copy of the videotape. Dkt. #20 at 27 n.4. The Court ordered Respondents to notify the Court whether the original or a copy of the tape in fact existed and, if so, to submit a copy of the tape to the Court. Dkt. #26. On January 10, 2007, Respondents filed copies of two videotapes of Petitioner's interview with Sergeant Roberts. Dkt. #31 Exs. QQ & RR. One tape was admitted at Petitioner's *Miranda* and voluntariness hearing held on April 3, 2001, and the other tape (a redacted version) was admitted at trial on April 6, 2001. *Id.* The Court has reviewed the videotapes in connection with this order.

### 1. Did Petitioner Knowingly and Intelligently Waive his *Miranda* Rights?

The Magistrate Judge concludes that Petitioner knowingly and intelligently waived his *Miranda* rights. Dkt. #22 at 12. Petitioner states in his objection that the Magistrate Judge "is trying to mislead this Court to believe that there was no government coercion" and that she "acted as if facts supporting Petitioner's claim did not exist at all." Dkt. #25 at 6. Petitioner further states that the "[s]tate court administered the proceeding with 'an evil eye and uneven hand' and made its decision based on 'whatever' the Respondents wanted." *Id.* In short, Petitioner simply disagrees with the conclusions of the state court and the Magistrate Judge on this issue.

The "trial court's determination that [Petitioner] knowingly and intelligently waived his *Miranda* rights is entitled to a presumption of correctness[.]" *Derrick v. Peterson*, 924 F.2d 813, 823 (9th Cir. 1991). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Court agrees with the Magistrate Judge that Petitioner has failed to do so. *See* Dkt. #22 at 12.

In determining that Petitioner knowingly and intelligently waived his *Miranda* rights, the trial court viewed the videotape of Petitioner's interview and heard testimony from expert witnesses and both Petitioner and Sergeant Roberts. The trial court readily acknowledged that Petitioner had some language impediments and was not able to understand some of the questions asked during the interview. Dkt. #20, Ex. C at 134. Similarly, the court of appeals acknowledged that Petitioner did not speak fluent English, but concluded from the videotape that he fully understood that he was waiving his *Miranda* rights:

> The most important evidence was the videotape of Torrefranca's interview with the police. The detective read him his rights in a clear, articulate manner and made no promises or threats. While Torrefranca does speak what could be termed "broken" English, he appears to have understood the situation and the great majority of the detective's questions.

Dkt. #20, Ex. FF ¶ 20.

Having viewed the videotape of Petitioner's interview with Sergeant Roberts, the Court concludes that Petitioner "has failed to meet his burden of showing by 'convincing

1  evidence' that the [state court] . . . erroneously found that [Petitioner] was capable of
2  understanding the *Miranda* warnings. *Derrick*, 924 F.2d at 824; *see* 28 U.S.C. § 2254(d)-(e).

### 2. Were Petitioner's Statements to the Police Made Voluntarily?

The Magistrate Judge concludes that Petitioner's statements to the police were made voluntarily because there was no evidence of improper government coercion. Dkt. #22 at 12. Petitioner objects to this conclusion on the ground that the Magistrate Judge ignored the evidence that supports Petitioner's claim. Dkt. #25 at 7. Petitioner argues in his petition that Sergeant Roberts improperly coerced him into making incriminating statements by telling him that he had to confess if "something happened" between Petitioner and J.F., by confronting him with false medical evidence, and by threatening him with "more trouble" if he was lying about not having sexual contact with J.F. Dkt. #1 at 9-11. Specifically, Petitioner contends that the following statements by Sergeant Roberts constituted improper coercion:

> If something happened you've got to tell me because I'm gonna know because we have these tests we do. Okay? They are medical tests. [They] will show me what happened. And if you're lying, Delmo, I don't want you to get in more trouble and have people say look [at him] he's sitting here and lying to us.
> . . . .
> 
> [I]f your penis went inside her, I will know. There's no doubt. It happens all the time. The doctor will go in, she'll see it, she'll take pictures, and I'll bring it to court and I'm gonna show it to the court and I'm gonna show it to the jury and then I'm gonna say he sat right here and lied. He told me that the 12-year-old girl was a liar, and they'll put her up on the stand also. Okay? I mean this is your, this is the chance. This is the chance to explain it. I mean if she did something[,] if she came on to you, if it was an accidental thing where she's on top of you and it could have went inside, I need to know it now. Okay? This is your chance to explain it.

*See* Dkt. ##1 ¶¶ 45-48, 20 Ex. N, 31 Exs. QQ & RR.

"[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110 (1985). In evaluating the voluntariness of a confession, the reviewing court must determine whether "'the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'" *Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir. 1991) (en banc) (quoting *Miller*, 474 U.S.

1 at 112). "The test is whether, considering the totality of the circumstances, the government 2 obtained the statement by physical or psychological coercion or by improper inducement so 3 that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 4 (9th Cir. 1987)

5 In this case, there is no evidence that Petitioner's will was overborne. Petitioner's 6 interview with Sergeant Roberts lasted approximately 45 minutes. Petitioner was not 7 handcuffed or physically restrained during the interview, nor was he physically threatened 8 or promised any benefits. With respect to the interview itself, Sergeant Roberts' statements 9 regarding the medical tests were based on information that Petitioner had engaged in sexual 10 intercourse with J.F. Sergeant Roberts merely provided Petitioner with her view that the 11 alleged sexual intercourse would leave some physical evidence. These statements were not 12 coercive. Petitioner repeatedly denied having sexual intercourse with J.F. Sergeant Roberts' 13 statements that Petitioner had to tell her if something happened between Petitioner and J.F. 14 and that it was his chance to do so were not so coercive as to render Petitioner's statements 15 involuntary. *See United States v. Gamez*, 301 F.3d 1138, 1144 (9th Cir. 2002) (holding that 16 law enforcement agent's comment that it would "behoove" the defendant to disclose what 17 he knew about a murder and that it was his "last chance" to come forward did not amount to 18 psychological coercion). Nor did Sergeant Roberts' exhortations that Petitioner tell the truth 19 render his statements involuntary. *See Sparf v. United States*, 156 U.S. 51, 56 (1895) 20 ("[T]elling a man to be sure to tell the truth is not advising him to confess anything of which 21 he is not really guilty."); *United States v. Barfield*, 507 F.2d 53, 56 (5th Cir. 1975) ("'[A]n 22 officer's admonition to tell the truth . . . does not of itself measure up to a paradoxical breach 23 of the Constitution or coercive pressure rendering the statement involuntary.'") (citation 24 omitted).

25 Considering the totality of the circumstances, the Court concludes that Petitioner's 26 interview complied with Constitutional requirements. *See United States v. Haswood*, 350 27 F.3d 1024, 1029 (9th Cir. 2003) (holding that the defendant, who repeatedly denied that he 28 had molested a young girl, was not improperly coerced into admitting that he in fact touched

- 8 -

1  the girl on three occasions where the police officer accused him of lying during a polygraph
2  test and showed him a newspaper article that illustrated the possible consequences of lying
3  about sexual abuse).[4]

4  The Court will accept the R&R with respect to the second ground for relief.

### D. Third Ground for Relief.

The state's expert witness, Wendy Dutton, testified at Petitioner's trial that (1) child victims are "overwhelmingly" abused by family members or someone they know, rather than by strangers, and tend to delay disclosure of the abuse when they have a close personal relationship with the abuser, (2) recantation by child victims is "not uncommon" when they have been abused by family members, and (3) while false accusations do occur, "[i]t's generally rare." Dkt. #20, Ex. E at 23-69. The court of appeals held that the trial court erred in overruling Petitioner's objection to Ms. Dutton's testimony that child victims are overwhelmingly abused by family members or someone they know. Dkt. #20, Ex. FF ¶ 27. The court concluded, however, that the error was harmless and did not deny Petitioner a fair trial because there was no evidence that someone other than Petitioner had abused J.F. *Id.* ¶ 29.

Petitioner contends in his third ground for relief that his right to a fair trial was violated because Ms. Dutton improperly vouched for the veracity of children's reports of sexual abuse. Dkt. #1 at 14-17. The Magistrate Judge concludes that Ms. Dutton's testimony did not violate Petitioner's due process rights because Ms. Dutton did not interview J.F. and testified only about general patterns of behavior, the improper vouching was indirect and

---

[4]*See also Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ("Before petitioner made any incriminating statements, he received partial warnings of his constitutional rights . . . . The fact that the police misrepresented the statements that [the co-suspect] had made is . . . insufficient in our view to make this otherwise voluntary confession inadmissible."); *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494-95 (9th Cir. 1997) (holding that the defendant's confession was voluntary despite the fact that he was wearing only a blanket and underwear at the time of questioning, he was detained overnight without anything to eat or drink, and police officers had encouraged him to tell the truth and misrepresented evidence about the crime) (citing *Frazier*); *Miller*, 984 F.2d at 1031 ("The FBI did not deceive Miller. However, even if it had, deception does not render [his] confession involuntary.") (citing *Frazier*).

isolated, the prosecutor did not draw attention to the improper testimony in his closing arguments, and the trial court properly instructed the jury that it was the sole judge of the credibility of witnesses. Dkt. #22 at 14 (citing Dkt. #20 Exs. E & G). Petitioner objects to the conclusion that the improper vouching was indirect and isolated based on the fact that the jury asked the following four questions: "How rare is lying about being abused? Why is it rare? How rare is recanting? Why is recanting done?" Dkt. #25 at 8 (citing Dkt. #20, Ex. E at 60). Petitioner also objects to the conclusion that the prosecutor did not draw attention to the improper testimony in closing arguments. *Id.* (citing Dkt. #20, Ex. G at 88, 113).

With respect to the first objection, Petitioner cites no testimony by Ms. Dutton in which she explicitly vouched for the credibility and reliability of *J.F.'s testimony*. The Magistrate Judge is correct that Ms. Dutton did not interview J.F. (or any other witness) and testified only about general patterns of behavior based on her training, experience, and research. Dkt. #22 at 14 (citing Dkt. #20, Ex. E at 33). Moreover, the trial court declined to answer the jury's questions and instructed the jurors that they were "the sole judges of what happened," thereby minimizing any prejudicial effect of the alleged improper vouching. Dkt. #20, Exs. E at 63, G at 68.

With respect to the second objection, the Court finds that the prosecutor did draw attention to Ms. Dutton's testimony in closing arguments. *Id.* Ex. G at 84-85, 88, 90, 110, 113, 115. Petitioner correctly points out that the prosecutor argued to the jury that Ms. Dutton's testimony "collaborat[ed] [sic] the victim's testimony that [the] events happened as she described." Dkt. #25 at 8 (citing Dkt. #20, Ex. G at 88).

To obtain habeas relief, however, a petitioner must do more than show that admission of testimony was clearly erroneous. He must show a "'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (quoting *Lisbena v. California*, 314 U.S. 219, 236 (1941)). He also must show that "'the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986) (quoting *Lisbena*, 314 U.S. at 236). "Unless fundamental fairness

1    is abridged, federal court interference is unwarranted." *Id.*; *see Wainright v. Goode*, 464 U.S.
2    78, 83 (1983) ("It is axiomatic that federal courts may intervene in the state judicial process
3    only to correct wrongs of a constitutional dimension."); *McCafferty v. Leapley*, 944 F.2d 445,
4    452 (8th Cir. 1991) ("More than a finding of trial error or even of plain error is required to
5    justify habeas relief on the basis of an evidentiary ruling.  An evidentiary error violates a
6    defendant's due process rights only when the error complained of is so gross, conspicuously
7    prejudicial, or otherwise of such magnitude that it fatally infects the trial.") (citations
8    omitted).

9    　　　　In this case, Ms. Dutton did not testify as to the veracity or credibility of J.F. or any
10   other witness.  Rather, she offered her opinion regarding the behavioral characteristics that
11   affect the veracity of sexual abuse victims in general.  Dkt. #20, Ex. E at 23-60.  The trial
12   court instructed the jury as follows:

> You, as jurors, are the sole judges of what happened. . . . [I]t's your decision and yours alone to evaluate the credibility and believability of all the witnesses, both expert and non-expert and the weight to be given to all testimony.  *You should not rely on any expert to tell you what result you should reach.*

16   *Id.* Ex. G at 68-70 (emphasis added).  To the extent Ms. Dutton did improperly vouch for
17   J.F.'s credibility, the trial court's instruction mitigated the prejudicial effect of the improper
18   testimony.  *See Donnelly*, 416 U.S. at 645 (holding that the prosecutor's improper comment
19   that the defendant hoped the jury would find him guilty of a crime less than first-degree
20   murder did not violate the defendant's due process rights where the trial court gave a curative
21   instruction).  Given Petitioner's and J.F.'s statements to Sergeant Roberts, and the trial
22   court's instruction to the jury that it was the sole judge of what happened, Petitioner has not
23   shown that Ms. Dutton's testimony rendered his "trial so fundamentally unfair as to deny him
24   due process." *Id.*; *see McCafferty*, 944 F.2d at 454 ("Neither Haugland nor Dr. Curran were
25   asked directly whether they believed S.F. when she described the alleged [sexual] abuse;
26   their statements could only have inferentially placed the 'stamp of believability' defendant
27   complains of.  Under these circumstances, we cannot say the statements so tainted
28   defendant's trial that his right to due process was violated."); *Adesiji v. Minnesota*, 854 F.2d

1  299, 301 (8th Cir. 1988) (holding that the admission of expert testimony on general patterns
2  of credibility among children reporting sexual abuse did not violate the defendant's due
3  process rights given the testimony of the victim and other witnesses and the trial court's
4  instruction that the jury was the sole judge of credibility).

5  The Court agrees with the Magistrate Judge that the state court's decision regarding
6  the admission of Ms. Dutton's testimony was not contrary to, or an unreasonable application
7  of, clearly established federal law. Dkt. #22 at 14-15; *see* 28 U.S.C. § 2254(d)(1). The Court
8  accordingly will accept the R&R with respect to the third ground for relief.

9  **E.   Fourth Through Twelfth Grounds for Relief.**

10  Respondents argue that grounds four through twelve are procedurally defaulted
11  because Petitioner raised them for the first time in his state court petition for post-conviction
12  relief. Doc. #20 at 21-22. In their response to that petition, Respondents argued that the trial
13  court should summarily dismiss the petition because the claims had been waived under
14  Rule 32.2 of the Arizona Rules of Criminal Procedure since Petitioner had not raised the
15  claims in his direct appeal. *Id.* Ex. LL at 4-9. Respondents argued in the alternative that the
16  claims had no merit. *Id.* The trial court dismissed the petition "for the reasons and based on
17  the arguments presented by [Respondents]." Doc. #20, Ex. OO. The court of appeals
18  summarily denied review. *Id.* Ex. PP.

19  **1.   Procedural Default.**

20  The Magistrate Judge concludes that grounds four through twelve are procedurally
21  defaulted because the state court dismissed the claims for procedural reasons. Dkt. #22 at 15
22  (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (stating that a claim denied on
23  alternative grounds does not vitiate a procedural bar)). Petitioner contends that even if he
24  "failed to abide by a state procedural rule, the Supreme Court has held that federal habeas
25  review of a defaulted claim is not precluded unless the state court's opinion contains a plain
26  statement clearly and expressly relying on its procedural bar." Dkt. #25 at 10 (citing *Harris*,
27  489 U.S. at 263).

28  Plaintiff's reliance on *Harris* is misplaced. The "plain statement" rule applies only

1  if "'it fairly appears that the state court rested its decision primarily on federal law[.]'"
2  *Harris*, 489 U.S. at 261 (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)); *see*
3  *Coleman v. Thompson*, 501 U.S. 722, 736 (1991) ("Coleman contends that [the plain
4  statement] rule, by its terms, applies to all state court judgments, not just those that fairly
5  appear to rest primarily on federal law. Coleman has read the rule out of context. . . . *Harris*
6  describes the *Long* presumption, and hence its own, as applying only in those cases in which
7  'it fairly appears that the state court rested its decision on federal law.'"); *Ylst v.*
8  *Nunnemaker*, 501 U.S. 797, 802 (1991) ("[T]he *Harris* presumption is to be applied only
9  after it has been determined that 'the relevant state court decision fairly appears to rest
10 primarily on federal law[.]") (citing *Coleman*, 501 U.S. at 740; alterations omitted).
11 Moreover, "[w]hether there is a plain statement from the state court is not the first or most
12 significant inquiry." *Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir. 1991). "Only where
13 a federal court has good reason to question whether there is an independent and adequate
14 state ground for the decision will the *Harris* presumption apply." *Id.*

15 Unlike the state court in *Harris*, which simply "laid the foundation" for a procedural
16 bar ruling by stating that the claims "could have been raised on direct appeal," the trial court
17 in this case explicitly adopted Respondents' procedural bar argument in summarily
18 dismissing the petition. *See Harris*, 489 U.S. at 266; Dkt. #20 Ex. LL. It does not fairly
19 appear that the trial court rested its decision primarily on federal law, and there is no good
20 reason to question whether there is an independent and adequate state ground for the
21 decision. The Court agrees with the Magistrate Judge's conclusion that grounds four through
22 twelve are procedurally defaulted. *See Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)
23 ("We . . . reject Carriger's argument that Arizona's reliance on his procedural default was so
24 unpredictable and irregular that it does not provide an adequate ground for disposal of his
25 claims.").

26       **2.    Cause and Prejudice.**

27 Procedural default may be excused if Petitioner can show cause and prejudice. Cause
28 is defined as "some objective factor external to the defense [that] impeded counsel's efforts

1  to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
2  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or
3  failed to raise the claim despite recognizing it, does not constitute cause for procedural
4  default." *Id.* at 486. To show prejudice, Petitioner "must show 'not merely that the errors
5  at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial
6  disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494
7  (emphasis in original; citation and alteration omitted).

8      Petitioner contends that his appellate counsel was ineffective because he failed to raise
9  the procedurally defaulted claims on direct appeal. The Magistrate Judge concludes that
10 Petitioner has not demonstrated that his counsel's performance was constitutionally deficient
11 as required to show cause for procedural default. Dkt. #22 at 16; *see Murray*, 477 U.S. at
12 488 ("[T]he question of cause for procedural default does not turn on whether counsel erred
13 or on the kind of error counsel may have made. So long as a defendant is represented by
14 counsel whose performance is not constitutionally ineffective under the standard established
15 in *Strickland v. Washington*, . . . we discern no inequity in requiring him to bear the risk of
16 attorney error that results in a procedural default."). Specifically, the Magistrate Judge
17 concludes that Petitioner has not shown that "appellate counsel omitted an issue that was
18 'clearly stronger than the issue that counsel did present.'" Dkt. #22 at 16-17 (quoting *Smith
19 v. Robbins*, 528 U.S. 259, 288 (2000)).

20     "[The] process of 'winnowing out weaker arguments on appeal and focusing on' those
21 more likely to prevail, far from being evidence of incompetence, is the hallmark of effective
22 appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*,
23 463 U.S. 745, 751-52 (1983)). Petitioner asserts that it is "very clear and obvious" that the
24 issues omitted were stronger than the issues presented on direct appeal. Dkt. #25 at 12.
25 Petitioner, however, does not present any specific facts or arguments to allow the Court to
26 evaluate this conclusory assertion. *See* Dkt. #22 at 17. The Court agrees with the Magistrate
27 Judge's conclusion that Petitioner has not shown cause for the procedural default.

28     The Magistrate Judge also concludes that Petitioner has not shown that the alleged

- 14 -

errors in grounds four through twelve reach the level of prejudice required to excuse his default. Dkt. #22 at 17. Petitioner asserts that there are "hundreds and hundreds of errors" and violations of his constitutional rights that support Petitioner's claims. Dkt. #25 at 13. Again, Petitioner does not present any specific facts or arguments to allow the Court to evaluate this conclusory assertion. The Court agrees with the Magistrate Judge's conclusion that Petitioner has not demonstrated prejudice.

The Court also agrees with the Magistrate Judge's conclusion that Petitioner has not shown that he is actually innocent of the charges against him. *See* Dkt. #22 at 17. Petitioner has not shown that, "in light of new evidence, 'it is more likely than not that no reasonable jury would have found [P]etitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 126 S. Ct. 2064, 2077 (2006) (citation omitted).

The Court will accept the R&R with respect to grounds four through twelve.

### F.   Thirteenth and Fourteenth Grounds for Relief.

Petitioner contends in his thirteenth ground for relief that trial counsel was ineffective by failing to do the following: investigate the charges, challenge the indictment, assert speedy trial rights, suppress evidence, call an expert, and object to the prosecutor's misconduct. Dkt. #1 at 55-57. Petitioner contends in his fourteenth ground for relief that appellate counsel was ineffective by failing to raise meritorious claims. *Id.* at 58.

Petitioner bears the burden of proving ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). To prevail on his claims of ineffective assistance of counsel, Petitioner must show that his counsel's representation fell below an objective standard of reasonableness and that Petitioner was thereby prejudiced. *Id.* Petitioner can establish prejudice by showing that there is a "reasonable probability" that the proceedings would have been different but for counsel's deficient performance. *Id.*

The Magistrate Judge concludes that Petitioner has not shown that his counsel was ineffective under *Strickland* because he has not specifically explained what counsel should have done differently or how the proceedings would have been different if counsel's performance had not been deficient. Dkt. #22 at 19 (citing *Strickland*, 466 U.S. at 690).

1 Petitioner asserts in his objection that the Magistrate Judge's "bias" in favor of Respondents
2 prevents her from seeing that "there are hundreds and hundreds of established, uncontested
3 and proven undeniable facts supporting Petitioner's claim[.]" Dkt. #25 at 13. Petitioner,
4 however, has presented no evidence to support the alleged improper bias on the part of the
5 Magistrate Judge. Nor does Petitioner specifically explain why the Magistrate Judge's
6 conclusion is incorrect. The Court accordingly will accept the R&R with respect to the
7 thirteenth and fourteenth grounds for relief. *See Sullivan v. Schriro*, No. CV-04-1517-PHX-
8 DGC, 2006 WL 1516005 (D. Ariz. May 30, 2006) (accepting R&R where the petitioner
9 failed to make specific objections to the proposed findings and recommendations of the
10 magistrate judge) (citing Fed. R. Civ. P. 72(b) ("The district judge . . . shall make a de novo
11 determination . . . of any portion of the magistrate judge's disposition to which specific
12 written objection has been made[.]")); *see also* 28 U.S.C. § 636(b)(1) (same); *Thomas v. Arn*,
13 474 U.S. 140, 149 (1985) ("[Section 636(b)(1)] does not . . . require any review at all . . . of
14 any issue that is not the subject of an objection."); *United States v. Reyna-Tapia*, 328 F.3d
15 1114, 1121 (9th Cir. 2003) (same).

16 **IT IS ORDERED:**

17 1. The Magistrate Judge's report and recommendation (Dkt. #22) is **accepted** as
18 set forth in this order.

19 2. Petitioner's petition for writ of habeas corpus (Dkt. #1) is **denied**.

20 3. The Clerk shall **terminate** this action.

21 DATED this 17th day of January, 2007.

*/s/ Daniel G. Campbell*
David G. Campbell
United States District Judge

- 16 -